SEP 22 2026 PM4:28
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-25-2

UNITED STATES OF AMERICA

v.

NURSULTON IZZATULLOEVICH KHAYDAROV,
aka Sayid Makhmudarov,
aka Rustam Mavlonov,
aka Dmitri Aganin,
aka Roman Smirov,
aka Kairat Nurtas

CRIMINAL NO. 3:26CR189 (SRU) (SDV)

VIOLATION:

18 U.S.C. § 371
(Conspiracy)

INDICTMENT

The Grand Jury charges:

COUNT ONE
(Conspiracy)

1. At all times relevant to this Indictment, the defendant NURSULTON IZZATULLOEVICH KHAYDAROV ("KHAYDAROV"), also known as Sayid Makhmudarov, Rustam Mavlonov, Dmitri Aganin, Roman Smirov, and Kairat Nurtas, held a valid New Jersey commercial driver's license. He operated a white 2017 Volvo tractor with a New Jersey registration AW494L.

The Conspiracy

2. Beginning no later than September 2025 and continuing until at least June 1, 2026, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, the defendant KHAYDAROV and others, both known and unknown to the Grand Jury, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree together and with each other and others known and unknown to the Grand Jury to commit offenses against the United States, that is:

a. to transport, transmit, and transfer in interstate and foreign commerce any stolen goods, wares, and merchandise having a value of $5,000 or more, knowing the same had been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314; and

b. to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

Manner and Means of the Conspiracy

3. The manner and means by which KHAYDAROV and others known and unknown to the Grand Jury (collectively, the "co-conspirators") sought to accomplish and did accomplish the object of the conspiracy included, among others, the following:

4. It was part of the conspiracy that KHAYDAROV and his co-conspirators purchased, took over, and otherwise assumed control of multiple motor carrier companies, including their U.S. Department of Transportation ("USDOT") numbers, motor carrier identification numbers, business email accounts, and the identities of their owners.

5. It was further part of the conspiracy that KHAYDAROV and his co-conspirators used the identities of the motor carrier companies and their owners to obtain contracts through deceptive and fraudulent emails and other electronic means to transport cargo loads across state lines.

6. It was further part of the conspiracy that co-conspirators would and did dispatch commercial drivers, including KHAYDAROV, to pick up the contracted cargo load.

7. It was further part of the conspiracy that KHAYDAROV and co-conspirators would and did use false identities and fraudulent driver's licenses for their drivers. With respect to KHAYDAROV, he and his co-conspirators used or possessed fraudulent driver's licenses in the names of Sayid Makhmudarov, Rustam Mavlonov, Dmitri Aganin, Roman Smirov, and Kairat Nurtas. The driver's licenses depicted the same or a similar photograph of KHAYDAROV, but with altered facial features.

8. It was further part of the conspiracy that KHAYDAROV and co-conspirators switched the license plate for KHAYDAROV's tractor to a different license plate, including New Jersey registration AT903S, in connection with the conspiracy in order to further conceal and obscure the identity of the tractor's actual registration.

9. It was further part of the conspiracy that KHAYDAROV and his co-conspirators used burner telephone numbers and encrypted messaging applications to conceal their identities, location information, and communications.

10. It was further part of the conspiracy that, rather than deliver the cargo loads to their destinations as promised, KHAYDAROV and his co-conspirators stole the loads for their own use and benefit. The conspiracy involved at least twenty-four cargo thefts, which has resulted in millions of dollars of retail losses to the victims.

11. It was further part of the conspiracy that KHAYDAROV and co-conspirators would and did make materially false statements, representations, and promises to the victim freight brokers or logistics companies by telling them that the cargo shipments had been delayed or lost, when in fact they knew at the time that the loads had been stolen.

12. It was further part of the conspiracy that, notwithstanding the victims' use of methods to track the load by electronic means, KHAYDAROV and co-conspirators would and did defeat those tracking mechanisms.

13. It was further part of the conspiracy that KHAYDAROV and his co-conspirators would and did demand ransom from the victims through payment via cryptocurrency or other electronic funds transfer.

14. It was further part of the conspiracy that KHAYDAROV was paid in cryptocurrency.

Overt Acts

15. In furtherance of the conspiracy and to effect the object of the conspiracy, the following overt acts, among others, were committed by members of the conspiracy in the District of Connecticut and elsewhere:

a. On or about September 14, 2025, KHAYDAROV picked up a cargo load in Swedesboro, New Jersey intended for delivery in Texas;

b. On or about January 19, 2026, co-conspirators used the identifying information of Motor Carrier 1, whose identity is known to the Grand Jury, including the previous owner's name, business name, business email, USDOT number, and motor carrier number, to email a logistics company located in Connecticut about a potential cargo transport from Los Angeles to San Diego, California;

c. On or about February 20, 2026, KHAYDAROV and his co-conspirators stole a shipment of nicotine products from a cargo load picked up in Fullerton, California and intended for delivery in Kentucky; and

d. On or about April 3, 2026, KHAYDAROV picked up a cargo load in Laredo, Texas using a counterfeit Nevada driver's license in the name of Dmitri Aganin.

All in violation of Title 18, United States Code, Section 371.

FORFEITURE ALLEGATION

16. Upon conviction of the offense alleged in Count One, KHAYDAROV shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all right, title, and interest any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 371, Title 18, United States Code, Section 2314, and Title 18, United States Code, Section 1343, as well as a sum of money equal to the total amount of the proceeds obtained as a result of the offenses, including a Coinbase account held in the name of Nursulton Khaydarov, User ID 68af94130c0201f539bc7390.

17. If any such forfeitable property, as the result of any act or omission of the defendant, cannot be located upon the exercise of due diligence, has been transferred to, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of such forfeitable property.

All in accordance with Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461, and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

________________________
FOREPERSON

UNITED STATES OF AMERICA

DAVID X. SULLIVAN
UNITED STATES ATTORNEY

DAVID T. HUANG
ASSISTANT UNITED STATES ATTORNEY